IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

KENDRICK STORY,                                                                      PLAINTIFF
ADC #109934

v.                                        5:19CV00255-DPM-JTK

WALKER, et al.                                                                       DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Chief Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the

1

District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.     Introduction

Plaintiff Kendrick Story, a state inmate incarcerated at the Cummins Unit of the Arkansas Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging unconstitutional conditions of confinement after his cell flooded on February 22, 2019. (Doc. No. 2)

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 31-33). Plaintiff filed a Motion for Summary Judgment, Brief in Support, and Statement of Facts in response (Doc. Nos. 34-36). Defendants filed a Response (Doc. No. 37), as did the Plaintiff (Doc. No. 38).

## II.    Complaint (Doc. No. 2)

Plaintiff alleged in his Complaint that while housed in the south wing of the Unit on February 22, 2019, the toilets overflowed and caused urine and human waste to cover the walls and floor in his cell. He informed Defendant Cole of the situation and she notified Defendant Walker, her supervisor, who refused to address the situation. Instead, Walker came Plaintiff's cell

2

and laughed at him. At 3:00 a.m. the next day (February 23), six hours after the overflow, Defendants and others came to clean the cells. Plaintiff claimed that Defendants left him in the improper conditions for six hours without acting, and would not allow the inmates to move to other, non-affected cells during the flooding. He also claimed that after the water in his cell was turned off, he was unable to use the bathroom for three days. He was forced to smell urine and waste while eating and sleeping and forced to use a toilet which would not flush. He also did not have drinking water in his cell for those three days.

### III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

#### A.   Official Capacity

The Court initially agrees with Defendants that Plaintiff's monetary claims against them in

their official capacities are barred by sovereign immunity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65-66 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

**B.    Individual Capacity**

**1)    Defendants' Motion**

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

According to Defendants' Declarations in support of their Motion, when they reported for their shift at 6:00 p.m. on February 22, 2019, they were informed that the main sewer line of the Unit was blocked, and later in the evening, some of the toilets in the East Building began to overflow. (Doc. Nos. 31-1, 31-2) The officers and inmate porters cleaned the water, which was about one inch deep, out of hallways and cells in the East Building, which housed inmates in punitive isolation. (Id.) The inmates then were given cleaning supplies to clean their cells. (Id.), The clean-up took several hours but was completed by the time breakfast trays were served about 3:30-4:00 a.m. (Id.)   Defendants could not move the inmates while the cells and hallways were being cleaned because of the widespread impact of the sewer clog. (Doc. No. 31-1, p. 2) Defendant Cole stated that she did not see any human waste on the floors in any of the cells when the toilets overflowed. (Doc. No. 31-2, p. 1) Both Defendants left their shift at 6:00 a.m. on February 23, and when they returned for their next shift at 6:00 p.m., the main sewer line was unclogged. (Doc. Nos. 31-1, 31-2) During that evening shift, from 6:00 p.m. February 23 until 6:00 a.m. February 24, the toilets or sinks were fully functional in the East Building and Defendant Walker was not aware of any problems with the sink and toilet in Plaintiff's cell. (Doc. No. 31-1) Defendant Cole did not have contact with Plaintiff after the February 22 shift, as she was assigned to a different wing of the East Building on February 23, and to a different Building (16), on February 24. (Doc. No. 31-2)

According to the Declaration of another officer, Tasha Griffin, the toilets and sinks in the East Building were fully-functional during her shifts on February 23 and February 24, 2019. (Doc. No. 31-3) She reviewed the security logs for that Building and noted an isolated issue with the

toilets in cells 6 and 7 in the east Building around 12:00 noon on February 24, 2019. (Id.) That log indicated that a plumber unclogged the toilets in those two cells and finished about 12:24 p.m. that same date. (Id.) Another officer present during the flooding, Patrick Pierre, stated similar facts in his Declaration, and noted that he did not see any human waste on the floors in any cells or hallways at the time of the flooding. (Doc. No. 31-5) He and other officers, including Defendant Walker, cleaned water from the cells and hallways for several hours and then gave inmates cleaning supplies to clean their cells. (Id.) He repeated that the toilets and sinks in the East Building were fully functional during his evening shifts on February 23-25, 2019.(Id.)

    Herman Shields was the Construction Supervisor at Cummins during the incident at issue. (Doc. No. 34-4) About 2:00 p.m. on February 22, 2019, he was notified of the clogged sewer line, which affected Buildings 13-16, East Building, Sally Port, Vinyl Bindery, Clothing Factory, Milk Processing, Slaughterhouse, and Freeline buildings. (Id.) When attempts to unclog were unsuccessful, he notified his supervisor at 4:00 p.m. and brought in larger equipment. (Id., p. 2) The crew worked until 9:00 p.m. that evening, and returned on 6:00 a.m. February 23, 2019. (Id.,) Shields then called in an outside plumber, and eventually they were able to unclog the sewer line sometime between 2:00-3:00 p.m. on February 23, 2019. (Id.) The clause of the clog was a blanket, jumpsuit and batteries which were tied together with string. (Id.) During the entire time, the water to the East Building and others was not shut off, and the bathrooms were operational because the manhole sewer covers were opened, and wastewater and sewage flowed out of them into a fence drainage ditch. (Id., p. 3) Shields was the only person to authorize that water be turned off, and he did not order that to happen. (Id.) He did review other work orders for East Building and found that on February 24, 2019, toilets in cells 6 and 7 of the East Building were reported clogged, in an unrelated incident, and were quickly unclogged. (Id., p. 4)

6

Defendants also present excerpts from Plaintiff's deposition. (Doc. No. 31-6) About 9:00 p.m. on February 22, 2019, he informed Defendant Cole that his cell flooded when the toilet overflowed with feces, sewer water and urine. (Id. p. 5) She informed her supervisor, Defendant Walker, who came by his cell and laughed. (Id.) The cell was not cleaned up until about 3:00 a.m. the next day, and Defendants left Plaintiff in his cell the entire time. (Id., p. 6) Plaintiff also stated that they forced him to stay in his cell for three days without running water. (Id.) He stated that Defendants should have cleaned his cell in a reasonable amount of time, and should have moved him out of the cell during the cleanup. (Id., p. 8) During the cleanup, Defendants and other officers came through the Unit with porters, handcuffed the inmates, and placed them in the hallway while the porters cleaned the water from the cells. (Id., p. 9) Plaintiff believed Defendant Walker controlled the water and turned off the water to his cell until February 24, 2019. (Id., pp. 10, 11) He also stated Defendant Cole turned the water off at Walker's direction. (Id., p. 15) He admitted that when he asked Officer Griffin at 6:00 a.m. on February 23 to move him out of the cell, she said there was nowhere else to move. (Id., p. 17) Plaintiff agreed that the main problem he had with Defendants is that they made him sit in a cell from about 9:00 p.m. on February 22, 2019 until sometime around 3:00 a.m. February 23, 2019 while there was human waste in his cell. (Id., p. 19) Finally, at one point in the deposition, Plaintiff stated, "Now the main thing, the man kept me in a cell. We can skip past the three days. He kept me in a cell with urine and human waste on the floor for six, seven hours. I couldn't get out of it. I couldn't use the toilet. We had to lay in there. That was the primary complaint." (Id., pp. 18-19)

Based on this evidence, Defendants state that Plaintiff cannot show that they violated his constitutional rights, because the conditions of confinement did not pose a substantial risk of serious harm, and because they did not act with deliberate indifference to his need for health and

7

safety. Based on this, Defendants state they are protected from liability by qualified immunity.

### 2) Plaintiff's Motion and Response

Plaintiff reasserts his original Complaint allegations, that Defendants intentionally left him in urine and feces for over six hours without moving inmates to other cells, and then left him in his cell for three days without any running water. He claims Defendants were responsible for turning off the water to his cell, and denied him drinking water and bathroom breaks. He also states he suffered from nausea, vomiting and diarrhea as a result of the conditions.

### 3) Defendants' Response

Defendants note that Plaintiff cannot offer any specific facts to show that officials had the option to move inmates in punitive isolation out of their cells when they flooded, or that Defendants were aware of problems with his sink and toilet after the cells were cleaned. In addition, he provides no specific facts to support his contention that Defendants lied about their roles in cleaning up and turning off the water.

### C.    Analysis

Although "[t]he Constitution does not mandate comfortable prisons," humane conditions of confinement include "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).   To support an Eighth Amendment violation, Plaintiff must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. Choate v. Lockhart, 7 F.3d 1370, 1373 (8th Cir. 1993). The "defendant's conduct must objectively rise to the level of a constitutional violation,...,by depriving the plaintiff of the 'minimal civilized measure of life's necessities.'... The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." Revels v. Vincenz, 382 F.3d 870,

875 (8th Cir. 2004) (quoting Rhodes v. Chapman, 452 U.S. 337, 342 (1981) and Estelle v. Gamble, 429 U.S. 97, 104 (1977)). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety...." Wilson v. Seiter, 501 U.S. 294, 298-9 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Furthermore, "discomfort compelled by conditions of confinement, without more, does not violate the amendment." Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (quoting Jackson v. Meachum, 699 F.2d 578, 581 (1st Cir. 1983).

The Court will first address Plaintiff's allegation that Defendants left him in his cell with sewage and water for six hours. According to the Declarations of Defendants and three other officials, once they became aware of the flooding, about 9:00 p.m. on February 22, 2019, they worked to clean halls and cells and provided inmates cleaning supplies. (Doc. Nos. 31-1 – 31-5) In addition, Plaintiff does not dispute that his cell was cleaned by about 3:30 a.m. February 23, 2019. (Doc. No. 31-6, pp. 21-22) The Court finds that even if feces and urine were present in the water (which is disputed by Defendant Cole and Officer Pierre), such conditions did not pose a substantial risk of serious harm. In reviewing the circumstances of an inmate's confinement, the focus is on "the length of his exposure to unsanitary conditions and how unsanitary the conditions were…." Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam). In Smith v. Copeland, the court held that no constitutional violations occurred when a pretrial detainee was confined in a cell with an overflowed toilet for four days, noting that Smith did not dispute that officers gave him the opportunity to flush the toilet and clean the mess. 87 F.3d 265, 268-9 (8th Cir. 1996). And in White v. Nix, no constitutional violation was found where a pretrial detainee was confined in an unsanitary cell for eleven days. 7 F.3d 120, 1212 (8th Cir. 1993). While Plaintiff claims that Defendant Walker initially laughed about the conditions, he does not dispute that

9

Walker, Cole and others cleaned the flooding within six hours. In addition, he provides no evidence that moving the inmates to another area was an available option, given the extensive areas affected by the flooding. Therefore, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a constitutional violation.

Next, Plaintiff claims Defendants left him in his cell without running water for three days, which Defendants dispute. First, the Court notes that Plaintiff offers no dispute to Defendant Cole's Declaration that she was not working in his area the days following the initial flooding. (Doc. No. 31-2, p.2) Next, he provides no evidence that Defendant Walker was aware of the conditions on those days, and he does not claim that he complained to Defendant Walker about the problem. Rather, he maintains his claim that when the initial flooding occurred, both Defendants were involved in turning off his water. Yet, he provides no evidence in support of this claim or to contradict the Declaration of Officer Shields that he was the only person authorized to turn off the water, and that he did not do so. (Doc. No. 31-4, p. 3) Other officers also declared that the water was not turned off. (Doc. Nos. 31-3 – 31-5) Plaintiff offered conflicting statements in his deposition testimony, when he stated the "main thing" was that Walker kept him in his cell during the flooding, and "we can skip past the three days." (Doc. No. 31-6, p. 18) He also stated that the main problem with Walker and Cole was that they made him sit in his cell for six hours during the initial flooding on February 22 and February 23. (Id., p. 19)

As noted above, to support an Eighth Amendment claim, Plaintiff must prove the existence of objectively harsh conditions of confinement, together with a subjectively culpable state of mind by prison officials in condoning or creating the conditions. Choate v. Lockhart, 7 F.3d at 1373. However, absent any evidence that Walker and Cole were aware that Plaintiff did not have water

10

for three days, the Court finds no evidence that they created or condoned the conditions. Therefore, the Court finds as a matter of law that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right.

## IV.  Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.  Defendants' Motion for Summary Judgment (Doc. No. 31) be GRANTED.

2.  Plaintiff's Motion for Summary Judgment (Doc. No. 34) be DENIED.

3.  Plaintiff's complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 24th day of March, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE